IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Criminal Action No. 06-cr-00294-PSF

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    WILLIAM C. CRABBE; and
2.    JAMES S. ROWAN,

    Defendants.

**ORDER ON MOTIONS TO QUASH SUBPOENA AND SEAL RECORDS**

This matter comes before the Court on the Motion to Quash Subpoena filed by Colorado Board of Accountancy ("the Board") (Dkt. # 80) on February 2, 2007 and on the Board's Motion to Seal Document (Dkt. # 81) filed February 1, 2007.

**BACKGROUND**

Defendants William C. Crabbe and James S. Rowan were owners and principal officers of Columbine HealthCareSystems, Inc. ("Columbine"), a national nurse-staffing agency that placed nurses in short-term work in thirty seven states. Columbine located its corporate offices in Greeley, Colorado, with a few small sales offices located in other states. For accounting purposes Columbine separated the employees into two groups: nurses and corporate employees. The indictment essentially alleges that for the period from April 1, 2000 through December 31, 2002, Defendants Crabbe and Rowan failed to remit to the Internal Revenue Service ("IRS") federal payroll taxes collected from the

employees and the employer's matching funds, filed false tax returns and thus committed tax evasion.

**THE INDICTMENT**

On July 25, 2006, a Grand Jury returned a 36-count indictment against the defendants (Dkt. # 1).  Eleven of the counts (Counts 1-11) are alleged against both defendants as owners and principal officers of Columbine, for failure to pay over Columbine employee federal payroll taxes in violation of 26 U.S.C. § 7202 and aiding and abetting same, in violation of 18 U.S.C. § 2, for the 11 quarters ending between June 30, 2000 and December 31, 2002.  Eleven other counts (Counts 12-22) are alleged against both defendants for conspiracy and failure to have Columbine match its employees' taxes that are due by law in violation of 26 U.S.C. § 7203 and aiding and abetting same, in violation of 18 U.S.C. § 2, for the same 11 quarters.

Twelve counts (Counts 23-34) are against Defendant Crabbe alone for willfully making and subscribing Employer's Quarterly Federal Tax returns, Forms 941, that reflected only wages paid to Columbine's corporate employees, but omitted nurses' wages that were substantially larger than the wages paid to the corporate employees, in violation of 26 U.S.C. § 7206(1), and aiding and abetting same, in violation of 18 U.S.C. § 2, for the twelve quarters ending between March 31, 1999 and December 31, 2001.

One count is alleged against Defendant Crabbe (Count 35) and one count is alleged against Defendant Rowan (Count 36) for tax evasion in violation of 26 U.S.C. § 7201.  With respect to these counts, the indictment alleges that during the calender

year 2001, Defendants Crabbe and Rowan each had and received taxable income of approximately $200,000 and each owed to the United States an income tax of approximately $78,922 and $71,020, respectively, and that on or about December 18, 2002 through May 23, 2003 Defendants Crabbe and Rowan willfully attempted to evade the said tax by the following actions in violation of Title 26, U.S.C. § 7201:

(1)   concealing and attempting to conceal income tax by using a shell company, Global Management LLC, that was established to pay management fees to Defendants Crabbe and Rowan;

(2)   distributing $200,000 each in management fees from Global Management LLC to Defendants Crabbe and to Rowan respectively from February 2001 through December 31, 2001;

(3)   instructing their accountant to reclassify their respective $200,000 in management fees as a note payable to Columbine, in an attempt to avoid paying income tax on the management fees received;

(4)   in October 2002, Defendant Crabbe signed the 2001 U.S. Return of Partnership Income, Form 1065, for Global Management LLC, which reclassified the $400,000 in management fees ($200,000 paid to Defendant Crabbe and $200,000 paid to Defendant Rowan) into a $400,000 note payable to Columbine;

(5)   reflecting on the 2002 Form 1065 for Global Management LLC on May 23, 2003, the $400,000 note payable, showing no payments had been made against it.

**THE PENDING MOTIONS**

By order entered December 13, 2006 (Dkt. # 57) this Court granted Defendant Rowan's motion for issuance of a subpoena duces tecum directed to the Board (Dkt. # 48).  On or about January 25, 2007, Defendant Rowan served the subpoena on the Board requesting production of:  1) all records and investigation files relating to a complaint filed by Catherine Gebhardt, apparently a former employee of Columbine, against H. Wayne Hoover, C.P.A., who apparently was an accountant for Columbine's business; and 2) all records relating to the investigation of Mr. Hoover, who was the subject of a disciplinary proceeding by the Board that resulted in a dismissal of the charges.

The Board objects to producing the documents on the grounds that 1) there is no record of a complaint filed by a Ms. Gebhardt and therefore no documents responsive to paragraph 1 of the subpoena; and 2) while there apparently was a disciplinary investigation of Mr. Hoover, such records of dismissed charges are not open to the public, citing to C.R.S. § 12-2-126(1)(b) and are protected under the "official information privilege," citing to *Martinelli v. Dist. Ct.*, 199 Colo. 163, 612 P.2d 1083 (Colo. 1980); and on the further grounds that defendant has not made a showing that the disciplinary file is relevant to this case or that it is necessary for any more than impeachment material in the event Mr. Hoover is called as a witness against Defendant Rowan.

Although Defendant Rowan did not file a response to the motion to quash, in his motion for issuance of the subpoena (Dkt. # 48) he stated his grounds for the

need to obtain these records.  He claims that in November and December of 2002, Ms. Gebhardt made a complain to the Board regarding the conduct that has been made the basis of the indictment against defendants, and that the records of the investigation are relevant because "[t]he government apparently reached the conclusion that the conduct of Mr. Hoover was not criminal as alleged by Ms. Gebhardt," and will call him as a prosecution witness (Dkt. # 48 at 2).

The Court held a hearing on these motion on February 15, 2007, at which both the Board and Defendant Rowan appeared by counsel and the Court received further argument from both counsel.  Counsel for the Board clarified that it had filed under seal with this Court those pages from its file that related to an investigation of Mr. Hoover, although the complainant was not Ms. Gebhardt, as defendant had suggested, but rather a Ms. Vannorsdel, a different former employee of Columbine.  These documents were available to the Court under seal as part of Dkt. # 82.

Counsel for the Board further advised that counsel for Defendant Rowan had presented other documents on that day that did indicate a complaint had been filed by Ms. Gebhardt, and the Board's counsel agreed to search for those documents and file them under seal with the Court by February 26, 2007, as the Court ordered (*see* Minutes of Feb. 15, 2007 Hearing, Dkt. # 88, at 2).  On February 26, 2007, the Board filed a Notice of Submission of Documents (Dkt. # 91) in which it stated that it still had found no record of a complaint lodged by Ms. Gebhardt, but had found a copy of a facsimile cover sheet indicating that a form for a complaint had been sent to her (Dkt. # 91 at 2).  Those documents are open to inspection by the public, according to the

Board, and have been attached to the submission filed by the Board, and thus are available to defendants.

This Court has completed its in camera inspection of the pages previously filed under seal by the Board, and now enters this written ruling on the motion to quash.

**ANALYSIS**

The Court notes that the application of an assertion of a privilege in a federal criminal case such as this is governed by the first sentence of Federal Rule of Evidence 501, which provides in pertinent part that such assertions are determined under the "common law as they may be interpreted by the courts of the United States in the light of reason and experience," and not necessarily under the substantive law of the state as may be the case in a civil matter. Moreover, as Defendant Rowan argued at the hearing, a defendant's Sixth Amendment right to confrontation may well overcome any state asserted interest in otherwise maintaining the confidentiality of investigatory or other files. *See Davis v. Alaska*, 415 U.S. 308, 319 (1974) ("In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record-if the prosecution insisted on using him to make its case-is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.").

The *Martinelli* case, cited by the Board, addresses a situation where the documents were sought in a civil action, not a criminal case such as this one where constitutional rights of accused defendants are implicated. Thus, the Board's assertion

of the state statute maintaining the confidentiality of complaints against licensed accountants, and the Colorado case law of "official privilege" embodied in *Martinelli*, must give way to the defendants' constitutional right to conduct meaningful cross-examination at trial of the witnesses against them.

Here, the defendants assert that the subject matter of the indictment and the subject matter of the complaints made against Mr. Hoover include some of the same transactions, and the government conceded as much at the hearing. From a review of the documents filed under seal, it appears that complainant Ms. Vannorsdel is complaining about discrepancies between her earnings as recorded by Columbine and the earnings as received by her, as opposed to the information reported to the Internal Revenue Service as reflected on forms W-2 received by her. Thus the Court is satisfied that the threshold of relevance between the Board's investigation and the charges in the indictment is established here. This is not to say that any of the Board's documents may be admissible at trial; but only that they may be useful to the defendants in preparing their defense and exercising their rights of cross-examination.

Furthermore, even if the Court were to apply the analysis set forth by the Colorado Supreme Court in the *Martinelli* case, it would appear to favor disclosure of the documents over the Board's assertion of the "official privilege." As the *Martinelli* decision explains, "[w]hen the official information privilege is raised in opposition to a request for civil discovery . . . the trial court must make an independent determination of the extent to which the privilege applies to the materials sought to be discovered. This determination is the result of the ad hoc balancing of:  (a) the discoverant's

7

interests in disclosure of the materials; and (b) the government's interests in their confidentiality." 199 Colo. at 170, 612 P. 2d at 1088.  According to the Colorado Supreme Court, the trial court should perform this balancing through an *in camera* examination of the materials sought to be discovered.  *Id.*, 612 P.2d at 1088-89. The opinion states that the factors to be considered in performing the balancing "vary widely, depending on the nature of the litigation and of the material sought to be discovered." *Id.*, 199 Colo. At 171, 612 P.2d at 1089.  For purposes of illustration, the opinion lists factors that should be considered when files or reports of an internal police investigation are sought, but not all of those apply to the instant case.[1]

Nonetheless, in performing its *in camera* review this Court has considered the general balancing factors cited in *Martinelli*, namely the interest of the defendants in obtaining the materials sought versus the interest of the Board in maintaining their confidentiality.  Because of the nature of the materials, the Court finds that the balance here favors disclosure.

---

[1] In this context the opinion states that the balancing should consider at least the following factors: "1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is nonfrivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case." *Id.*, quoting *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

In the Court's view, the materials filed by the Board under seal are basically innocuous documents that need not be maintained as confidential. The 12 pages relating to the complaint by Ms. Vannorsdel, which complaint was made known publicly when the Board's counsel argued the motion in open court at the hearing, basically consist of an exchange of letters between the Board, Ms. Vannorsdel and Mr. Hoover. There does not appear to any substantive discussion of the charges, any documents collected from any other party relating to the charges, or any conclusion by the Board that would embarrass or prejudice Mr. Hoover.  Moreover, while the documents would appear to have little utility to the defense of the criminal case against defendants, the nature of the documents simply do not rise to the level of requiring confidentiality that outweighs the interests of the defendants under an assertion of official privilege even if this Court were bound by the Colorado decisional law.

**CONCLUSION**

The Motion to Quash Subpoena filed by Colorado Board of Accountancy ("Board") (Dkt. # 80) on February 2, 2007 and the Board's Motion to Seal Document (Dkt. 81) filed February 1, 2007, are therefore DENIED.  The Board is directed to provide copies of the unproduced documents filed with the Court under seal as Dkt. # 82 to counsel for defendants within three business days, as well as the documents filed as part of Dkt. # 91, if they have not previously been produced.

DATED:  March 9, 2007

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge