UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 06-cr-00294-MSK

UNITED STATES OF AMERICA,

      Plaintiff,

v.

WILLIAM C. CRABBE,

      Defendant.

---

**OPINION AND ORDER DENYING MOTION FOR NEW TRIAL AND
MOTIONS FOR DISCOVERY**

---

**THIS MATTER** comes before the Court pursuant to Mr. Crabbe's Motion for New Trial **(# 369)**, the Government's response **(# 375)**, and Mr. Crabbe's reply **(# 378)**; and Mr. Crabbe's Motion for Discovery **(# 380)**, Mr. Crabbe's Second Motion for Discovery **(# 382)**, and the Government's response **(# 385)**[1],[2]

---

[1] On April 16, 2010, Mr. Crabbe moved **(# 386)** for leave to file a reply in support of his motions for discovery. The motion did not propose a deadline by which such a reply would be filed. On April 19, 2010, the Court granted **(# 387)** that request. As with the motion, the Order did not set a deadline for the filing of a reply. Three weeks have passed since the Court's Order, and Mr. Crabbe has not filed a reply brief. Given the passage of time, the Court deems Mr. Crabbe to have abandoned any intention to file a reply brief. In any event, the Court finds that it is fully apprised of the parties' positions on the issues based on the current briefing.

[2] The Court's records also reflect a number of motions remain pending with regard to former co-Defendant James Rowan, notwithstanding his demise. These motions appear to be the result of Mr. Crabbe filing motions on his own behalf and failing to accurately designate in the Electronic Case Filing system the Defendants to whom the motions relate. The Clerk of the Court is directed to terminate Docket # 338, 355, 369, 376, 380, 382, and 386 to the extent they are listed as being asserted on behalf of Mr. Rowan.

The Court assumes the reader's familiarity with the proceedings herein. In February 2008, a jury convicted Mr. Crabbe of several counts of failing to remit employment taxes withheld from his employees in violation of 26 U.S.C. § 7202, and several counts of filing false quarterly employment tax returns in violation of 26 U.S.C. § 7206(1). In January 2010, the 10th Circuit affirmed Mr. Crabbe's conviction. *U.S. v. Crabbe*, 2010 WL 318399 (10th Cir. Jan. 28, 2010) (slip op.).

**A. Motion for New Trial**

In the instant motion, Mr. Crabbe seeks a new trial **(# 369)**, arguing that he has obtained newly-discovered evidence that the late Mr. Rowan, his former business partner and co-Defendant, was in "advanced stages of dementia when he testified" at Mr. Crabbe's trial in February 2008. Mr. Crabbe asserts that Mr. Rowan's mental condition rendered him "incompetent to testify" at that time.

Mr. Crabbe points to a recent affidavit of Gabriel Rodriguez, Mr. Rowan's former caretaker, who states that Mr. Rowan had been under a physician's care for hepatic encephalopathy, a liver disease that sometimes caused ammonia levels to build up in Mr. Rowan's brain, resulting in periods of dementia. *See Docket* # 369, Ex. B. Mr. Rodriguez's affidavit states that Mr. Rowan had been receiving treatment for this condition for two years prior to Mr. Crabbe's trial, that Mr. Rowan had been hospitalized as a result of the condition on several occasions, and that he was often functioning at a diminished mental capacity, particularly when he was not taking prescribed medication.

Mr. Crabbe contends that Mr. Rowan's diminished mental functioning caused him to fabricate many aspects of his testimony "to fill in the empty slate from his lost memories," and

2

that "run of the mill impeachment" of Mr. Rowan's testimony was insufficient to address its falsity. Moreover, based on Mr. Rodriguez's assertion that "if anyone had been around [Mr. Rowan] for even ten minutes they would have had to have known that something was seriously wrong with this man," Mr. Crabbe contends that the Government should have known at the time of Mr. Crabbe's trial that Mr. Rowan was incompetent to testify. Mr. Crabbe contends that this situation warrants granting him a new trial.

The Court has carefully considered Mr. Crabbe's arguments, but finds them to be without merit. The instant motion is cognizable under any number of theories: *e.g.* that the failure to disclose Mr. Rowan's diminished capacity is a *Brady* violation, a violation of the Jencks Act, that the Government's tender of Mr. Rowan's incompetent testimony constitutes a fraud on the court, etc. But regardless of the analytical framework appropriate for assessment of this issue, at a minimum, Mr. Crabbe must demonstrate that the Government knew (or, at the very least, should have known) of Mr. Rowan's diminished mental condition prior to calling him as a witness at trial. Put differently, Mr. Crabbe is not entitled to any relief if, at the time of trial, the Government was not more aware of Mr. Rowan's diminished condition, or was no more aware of it than was Mr. Crabbe. *See e.g. Romano v. Gibson*, 239 F.3d 1156, 1175 (10th Cir. 2001) (noting that "a prosecutor's <u>knowing</u> use of false testimony deprives a criminal defendant of due process, warranting a new trial if there is a reasonable likelihood the false testimony affected the judgment," but finding that the defendant "failed to assert any evidence indicating prosecutors <u>knew</u> [a later-recanting witness'] testimony was false") (emphasis added).

Mr. Crabbe has not presented evidence that clearly demonstrates that Government counsel knew of Mr. Rowan's condition or debilitation prior to trial. Mr. Crabbe offers no

3

evidence to demonstrate the Government's actual knowledge of Mr. Rowan's condition prior to trial; instead, Mr. Crabbe relies entirely on an inference that the Government <u>should</u> have known of that condition. In support of this inference, Mr. Crabbe points to two items: Mr. Rodriguez's lay opinion that "ten minutes" of observation of Mr. Rowan would have been sufficient to indicate that "something was seriously wrong" with him, and Dr. Bograd's observation in a report **(# 341)**, dated August 12, 2008, that "Mr. Rowan's mental status has fluctuated" since a date prior to trial. (Implicitly, Mr. Crabbe contends that the Government had several opportunities to observe Mr. Rowan in lengthy pre-trial debriefings and interviews, and thus, syllogistically, concludes that the Government must have been aware of his mental debilitation.)

Mr. Rodriguez's opinion that "ten minutes" of observation of Mr. Rowan at any time would have suggested to the observer that Mr. Rowan had diminished mental capacity is insufficient for at least three reasons: (i) Mr. Rodriguez is a layperson, not an expert, and thus, not competent to provide a forensic opinion as to Mr. Rowan's competence at some point in the past; (ii) Mr. Rodriguez's statements are not specific enough to establish Mr. Rowan's legal incapacity to testify as of February 2008; and (iii) Mr. Rodriguez's opinion, or at least the inference Mr. Crabbe requests that the Court draw from it, is contrary to the record in this case.

Turning first to Mr. Rodriguez's qualifications, Mr. Rodriguez is not a physician or mental health provider. He was Mr. Rowan's son-in-law and a construction worker, and was hired to serve as Mr. Rowan's caretaker after suffering an injury in late 2007 that prevented him from continuing to work. As such, Mr. Rodriguez is competent to testify as a percipient witness – that is, to describe what he saw or heard – but not to proffer opinions as to what others should or should not have perceived when dealing with Mr. Rowan. With regard to the crux of the

4

matter for which Mr. Crabbe offers Mr. Rodriguez's affidavit – to show the Government's constructive knowledge of Mr. Rowan's impairment prior to calling him as a witness at trial – Mr. Rodriguez's affidavit recites only a single instance in which Mr. Rodriguez was present when Government counsel met with Mr. Rowan.³ *Docket* # 369, Ex. B, ¶ 11. Notably, Mr. Rodriguez does not identify any specific events that occurred at this meeting that could be said to put the Government on notice of Mr. Rowan's condition. Rather, Mr. Rodriguez's statements on this point are vague and temporally unclear. *Id.* Under these circumstances, the Court finds nothing in Mr. Rodriguez's affidavit that asserts, as percipient testimony, facts that could demonstrate the Government's actual or constructive notice of Mr. Rowan's diminished mental condition.

Next, the Court finds that Mr. Rodriguez's ultimate opinion – that any observer of Mr. Rowan in or about February 2008 should have "known that something was seriously wrong with this man" – is insufficiently specific. The phrase "seriously wrong" does not adequately describe an impairment that rises to the level of legal incompetence to testify. Even assuming

---

³Mr. Rodriguez states, in pertinent part:

> I recall during the first few months of 2008 I was driving Mr. Rowan to Denver. On at least one occasion I rode in the elevator with Mr. Rowan and the prosecutors. They met me and knew I had to drive Mr. Rowan because he was unable to drive himself. During February of 2008, I drove Mr. Rowan to Denver for purposes of testifying in Bill Crabbe's trial. . . [B]ased on my constant contact with Mr. Rowan during this same time period, Mr. Rowan did not have his mental faculties. He could not remember events in his life, facts, or communicate with any accuracy that was reliable. During this time, even though Mr. Rowan may have part of the time seemed coherent, he was often saying things that made absolutely no sense.

5

the Government might have recognized similar cognitive defects as those recited by Mr. Rodriguez, the fact that Mr. Rowan might have been forgetful or had difficulty communicating coherently does not, of itself, demonstrate that the Government should have concluded that Mr. Rowan was incompetent to testify.

Finally, and most importantly, Mr. Rodriguez's opinion that Mr. Rowan's cognitive defects should have been apparent to those – including the prosecution – that encountered him is inconsistent with a wealth of evidence in the record. To begin with, Mr. Rodriguez's affidavit is itself internally inconsistent. Although Mr. Rodriguez states that it should have been obvious to anyone encountering Mr. Rowan that he was suffering from diminished capacity, the affidavit also acknowledges that "Mr. Rowan may have part of the time seemed coherent." *Id.*, ¶ 11. Moreover, Mr. Rowan's June 18, 2008 Motion to Continue Sentencing **(# 249)** recites facts that call the observations in Mr. Rodriguez's current affidavit into question. Mr. Rowan's June 2008 motion stated that "based upon telephone conversations with [Mr. Rodriguez], Mr. Rowan has been increasingly ill physically and mentally over the course of the last few weeks" and that "[a]lthough Mr. Rowan does take medicines for his condition . . . there is some doubt whether Mr. Rowan has taken the proper dose of that medicine recently." *Docket* # 249 at ¶ 2, 3 (emphasis added). This motion suggests that Mr. Rowan's diminished mental capacity became evident to Mr. Rodriguez and/or Mr. Rowan's counsel only in the "few weeks" preceding its filing in June 2008, a time long after Mr. February 2008 testimony at Mr. Crabbe's trial.

In addition, the record reflects several occasions and extended periods of time during which people observed Mr. Rowan for extended periods of time without expressing any concern about his competence. For example, the Court conducted a change of plea hearing with Mr.

6

Rowan on February 19, 2008, just days before Mr. Rowan's testimony in Mr. Crabbe's trial. The Court engaged in extended colloquy with Mr. Rowan, eventually finding that Mr. Rowan was "fully competent to enter an informed plea." *Docket* # 298 at 30.[4] Although Mr. Rowan stated – apparently falsely – that he was taking not medication at that time and denied having been treated for any mental health issues, nothing in his demeanor at that hearing caused the Court or counsel to question his mental competence. Indeed, Mr. Rowan was represented by counsel throughout this case. Not until June 18, 2008 – nearly six months after Mr. Rowan's testimony in Mr. Crabbe's trial, nearly a year after Mr. Harris began representing Mr. Rowan in this action, and after nearly two years of prosecution of Mr. Rowan himself – did Mr. Rowan's counsel first raise concerns about his competence *See Docket* # 249. If the Court and Mr. Rowan's counsel were unable to observe facts demonstrating Mr. Rowan's incompetence during this time period, there is no reason to assume that the Government observed anything different.

Mr. Rodriguez's lay opinion is also inconsistent with the report of Dr. Bograd, a trained psychiatrist, who observed that Mr. Rowan's mental status "fluctuated." Dr. Bograd was able to meet with Mr. Rowan in July 2008 "during a relatively lucid interval during which time he demonstrated to me [to have] legal capacities . . . consistent with competence." *Docket* # 341 at 17. Dr. Bograd's report recites her own conversations with Mr. Rodriguez, in which Mr. Rodriguez stated that "On a good day[, Mr. Rowan] can be 'sharp as a tack,'" and that it was

---

[4]The also Court notes that Mr. Rowan also participated in the preparation of a Presentence Investigation Report with a Probation Officer. The Probation Officer did not report any obvious mental incapacity in Mr. Rowan. Similarly, in its response to Mr. Crabbe's motion, the Government produced memoranda of interviews that its agents conducted with Mr. Rowan and his counsel in January 2008, a few weeks prior to his testimony in Mr. Crabbe's trial, and again in February 2008, a week prior to the commencement of trial. Those memoranda also disclose no adverse observations of Mr. Rowan's mental status.

7

only "more recently" (relative to Dr. Bograd's July 2008 evaluation) that it became unusual that "Mr. Rowan has two good days in a row." *Docket* # 341 at 6. Thus, Dr. Bograd's trained observations of Mr. Rowan reveal that, even during advanced stages of his illness, he would have "lucid intervals" in which he demonstrated adequate mental capacity. Even if Mr. Rowan was not mentally competent at the time he testified at trial, Mr. Crabbe has presented no evidence to suggest that Mr. Rowan was not having such lucid intervals during the times he met with the Government prior to trial.

Finally, and perhaps most importantly, Mr. Crabbe and his counsel had a full opportunity to observe Mr. Rowan's demeanor, and to cross-examine him at trial. Mr. Crabbe now describes Mr. Rowan's demeanor at trial in stark terms – "completely disheveled with his mouth agape . . often incoherent and entirely off-point."[5] But Mr. Crabbe never raised concerns about Mr. Rowan's mental competence, either during the trial or in his motion for new trial filed in April 2008. Indeed, Mr. Crabbe did not raise this issue of Mr. Rowan's incompetence until <u>after</u> Mr. Rowan's own counsel raised that issue on June 18, 2008. In this respect, Mr. Crabbe attempts to charge the Government with observing and recognizing something that even Mr. Crabbe himself failed to independently observe and raise.

Against this backdrop, the Court finds that Mr. Crabbe's argument that the Government knew or should have known of Mr. Rowan's diminished capacity prior to calling him as a witness at trial in January 2008 is without meaningful support. Because the Government's

---

[5] Mr. Crabbe argued that "Mr. Rowan's testimony . . . was wholly incredible" and should have been disregarded by the Court. Indeed, the jury may have done just that. As the Court's Opinion and Order denying Mr. Crabbe's motion for a new trial makes clear, it was not necessary to rely on Mr. Rowan's testimony in order to support the jury's verdict against Mr. Crabbe .

8

advance knowledge of Mr. Rowan's condition is a necessary predicate to a conclusion that the proffer of Mr. Rowan as a trial witness constituted an injustice warranting relief in the form of a new trial, Mr. Crabbe's motion for a new trial is denied.

### B. Motions for Discovery

Mr. Crabbe's remaining motions **(# 380, 382)** request leave to conduct discovery to further plumb the circumstances of Mr. Rowan's mental condition when he testified at trial. The Court denies both motions for the following reasons.

In August 2009, Mr. Rowan's prior counsel filed a motion **(# 374)**, stating that he was aware of the allegations made in Mr. Crabbe's current motion for a new trial and that he believed he "may be ethically obligated [under the crime/fraud exception to the privilege rule] to disclose statements made to [him] by Mr. Rowan concerning Dr. Crabbe, and other circumstances germane to Mr. Rowan's testimony before this Court." In addition, following Mr. Rowan's death, counsel obtained a written waiver by Mr. Rowan's personal representative of Mr. Rowan's right to assert the attorney-client privilege. Despite his assessment that an exception to the attorney-client privilege was applicable and that a waiver of such rights had been obtained, Mr. Rowan's counsel was unwilling to disclose the information without the approval of this Court. The Court denied **(# 379)** this motion, finding that Mr. Rowan's counsel "states no authority for this court to make" an advisory determination regarding the nature and scope of Mr. Rowan's continued attorney-client privilege.

Mr. Crabbe then filed the instant motions, arguing that cases such as *U.S. v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007), stand for the proposition that "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry" into facts that "may . . . be able

9

to demonstrate that [a defendant] is entitled to a new trial." Mr. Crabbe proposes that the Court could, pursuant to Fed. R. Cr. P. 33(b)(1), authorize Mr. Crabbe to conduct discovery from Mr. Rowan's former counsel.

The Court denies Mr. Crabbe's motions for two different reasons. First, the Court notes that Mr. Crabbe's motions do not address the basis for the Court's prior denial of Mr. Rowan's counsel's motion. Mr. Rowan's counsel apparently believes that there is no continuing privilege that prevents him from disclosing Mr. Rowan's statements.[6] Under these circumstance, it is unclear what issue there is for the Court to determine.

The Court also rejects Mr. Crabbe's motion for discovery for another reason. As discussed above, the question of whether Mr. Crabbe might be entitled to a new trial is not driven by questions as to whether Mr. Rowan testified falsely (whether due to incoherence or a conscious fraudulent purpose), but whether the Government was aware of circumstances that indicated a possibility of such false testimony. It does not appear that the information sought by Mr. Crabbe bears upon the Government's knowledge. Mr. Rowan's former counsel describes concerns "statements made <u>to me</u> by Mr. Rowan concerning Dr. Crabbe and other circumstances germane to Mr. Rowan's testimony." *Docket #* 374 at 1-2 (emphasis added). Although these statements might bear upon the truth or falsity of the testimony given by Mr. Rowan, these statements do not appear to relate to the question of the <u>Government's</u> knowledge of Mr.

---

[6]Under Colorado law, the attorney-client privilege belongs to the client, and it is the client, not the attorney, that may choose to assert or waive it. *People v. Ragusa*, 220 P.3d 1002, 1006-07 (Colo. App. 2009). Given that Mr. Rowan's personal representative has waived any privilege Mr. Rowan may have had (or continues to have), it is unclear whom Mr. Rowan's counsel believes is capable of now asserting the privilege. In any event, it is ultimately Mr. Rowan's counsel's obligation to assess whether the privilege continues past Mr. Rowan's death, who has the ability to assert that privilege, and whether that person has effectively waived it.

Rowan's mental condition or any intention to give false testimony prior to trial. Thus, based on this record, the information sought by Mr. Crabbe from Mr. Rowan's counsel is not likely to result in a new trial.

For the foregoing reasons, Mr. Crabbe's Motion for New Trial **(# 369)**, Mr. Crabbe's Motion for Discovery **(# 380)**, and Mr. Crabbe's Second Motion for Discovery **(# 382)** are **DENIED**. The Clerk of the Court is directed to terminate Docket # 338, 355, 369, 376, 380, 382, and 386 to the extent they are listed as being asserted on behalf of Mr. Rowan.

Dated this 14th day of May, 2010

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge